UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. FLETCHER,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>　　　　Defendant. | Case No. CV 12-8472-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

# I.

# **INTRODUCTION**

On October 9, 2012, plaintiff William D. Fletcher filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered if plaintiff's impairments, whether individually or in combination, met or medically equaled one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"); (2) whether the ALJ properly determined plaintiff's residual functional capacity ("RFC"); (3) whether the ALJ properly considered plaintiff's credibility; and (4) whether the ALJ erred at step four by failing to consult a vocational expert. Plaintiff's Brief in Support of Relief Requested in Plaintiff's Complaint ("P. Brief") at 2-9; Memorandum in Support of Defendant's Answer ("D. Mem.") at 5-25.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ: properly considered the Listings; properly determined plaintiff's RFC; properly considered plaintiff's credibility; and did not err by failing to consult a vocational expert. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on the date of his September 27, 2010 administrative hearing, is a college graduate. AR at 27, 30, 32-33. Plaintiff has past relevant work as a collections clerk. *Id.* at 169.

On May 28, 2009, plaintiff filed applications for a period of disability, DIB, and SSI, alleging on onset date of January 1, 2008, due to a stroke, heart problems, and high blood pressure. *Id.* at 56-59, 156. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 62-66, 68-75.

On September 27, 2010, plaintiff, represented by counsel, appeared and

testified at a hearing before the ALJ. *Id.* at 27-55. On February 22, 2011, the ALJ denied plaintiff's claims for benefits. *Id.* at 15-23.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. *Id*. at 17.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: hypertension with hypertensive kidney disease and hypertensive heart disease, status-post hemorrhagic stroke; and obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in the Listings. *Id.* at 17-18.

The ALJ then assessed plaintiff's RFC,[1] and determined that he had the RFC to perform light work, with the limitations that plaintiff: could lift twenty pounds occasionally and 10 pounds frequently; could stand/walk/sit up to six hours in an eight-hour day; and must avoid exposure to unprotected heights and operation of dangerous machines. *Id.* at 18.

The ALJ found, at step four, that plaintiff was capable of performing his past relevant work as a collections clerk. *Id*. at 22.

Although the ALJ did not need to reach step five, he also determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform "other jobs that exist in significant numbers in the national economy." AR at 22-23. The ALJ did not specify a particular job, but noted that plaintiff was

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

capable of performing "a nearly full range of light work, which necessarily includes the entire range of sedentary work." *Id.* at 23. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Considered Plaintiff's Kidney Impairment

Plaintiff argues that the ALJ failed to properly consider the Listings at step three. P. Brief at 2-5. Specifically, plaintiff asserts that the ALJ should have considered Listing 6.02(C)(3)(a), not Listing 4.00(H)(1), and his findings regarding Listing 4.00(H)(1) were incorrect. *Id.* at 2-3. Plaintiff further contends that the ALJ failed to give the proper weight to his treating physicians. *Id.* at 4.

#### 1. Listing 6.02(C)(3)(a)

At the hearing, plaintiff argued that he met Listing 6.02(C)(3)(a); however, the ALJ did not specifically mention this Listing in his decision.[2] AR at 51. Instead, the ALJ concluded that plaintiff did not meet or equal Listing 4.00(H)(1) because there was no evidence of end organ damage.[3]

---

[2] Listing 6.02(C)(3)(a) is an "[i]mpairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months. With: . . . (C) Persistent elevation of serum creatinine to 4 mg per deciliter (dL) (100 ml) or greater or reduction of creatinine clearance to 20 ml per minute or less, over at least 3 months, with one of the following: . . . (3) Persistent fluid overload syndrome with: (a) Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg. . ."

[3] Listing 4.00(H)(1) explains that to evaluate hypertension, the Commissioner will "evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when [the Commissioner] consider[s] its effects under the listings. [The Commissioner] will also consider any limitations imposed by []

At step three, the claimant bears the burden of demonstrating that he or she meets or equals a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). When the claimant argues that he meets or equals a specific Listing, it is not error if an ALJ fails to specifically identify the Listing if he or she thoroughly discusses the evidence relevant to the Listing in the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (if the ALJ adequately discusses the evidence, "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant has failed to satisfy every different section of the [Listing]"); *Scuderi v. Comm'r*, 302 Fed. Appx. 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *Lilly v. Astrue*, No. 12-381, 2012 WL 4364267, at *2 (C.D. Cal. Sept. 24, 2012) ("[A] well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decision may, under certain circumstances, support an unexplained finding of no medical equivalence at step three."); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (an ALJ's failure to consider a Listing is harmless if he made findings elsewhere that conclusively show that plaintiff does not meet or equal such Listing).

Contrary to plaintiff's assertions and implications, the ALJ properly addressed Listing 4.00(H)(1) because it was relevant and his counsel argued that plaintiff potentially met or equaled Listing 4.00(H)(1). AR at 50. Listing 4.00(H)(1) requires the ALJ to evaluate hypertension's effect on other body systems, including the kidney, which the ALJ did. There is substantial evidence to show that plaintiff had chronic kidney disease, as the ALJ found. Plaintiff's glomerular filtration rate ("GFR") consistently showed that he had stage three

---

hypertension" in the RFC determination.

6

chronic kidney disease. *See id.* at 299, 321, 329. But a diagnosis of kidney disease is not equivalent to meeting or equaling a Listing. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) ("The mere diagnosis of an impairment listed in the [Listings] is not sufficient to sustain a finding of disability."); 20 C.F.R. §§ 404.1525(d), 416.925(d).

Here, during the hearing, the ALJ noted that plaintiff was required to provide evidence that he had a persistent serum creatinine level of 4 milligrams per deciliter or greater, or a reduction of creatinine clearance to 20 milliliters per minute or less, for at least three months in order to meet Listing 6.02(C)(3)(a). AR at 52; *see* Listing 6.02(C)(3). In the decision, the ALJ cited plaintiff's serum creatinine level on November 16, 2010 – it was 1.94.[4] AR at 19, 446. This evidence was relevant and showed that plaintiff's serum creatinine level was too low to meet a Listing on November 16, 2010.

Arguably, the mention of plaintiff's serum creatinine level on only one date was an inadequate discussion of this element of Listing 6.02(C)(3)(a). Nevertheless, even if that was the case, the ALJ's failure to specifically identify Listing 6.02(C)(3)(a) was harmless error. Plaintiff did not meet his burden to demonstrate that his impairment met Listing 6.02(C)(3)(a). When the ALJ asked plaintiff's counsel to direct him to evidence of plaintiff's serum creatinine levels meeting Listing 6.02(C)(3)(a), he could not do it. *Id.* at 52-53. Indeed, the record shows that throughout 2009 and 2010, plaintiff's serum creatinine levels were between 1.78 and 2.35, well below the level required to meet a Listing. *See id.* at 299, 321, 329, 336, 340, 342, 357, 367. As such, even if the ALJ were required to specifically identify and discuss Listing 6.02(C)(3)(a) in his decision, his failure to

---

[4] The ALJ stated plaintiff's serum creatinine level was 1.6, as reflected on the laboratory report. AR at 19, 446. As required, because plaintiff is African American, this court multiplied the result by 1.21. *See, e.g., id.* at 329.

7

do so was harmless because the evidence clearly shows that plaintiff did not meet such Listing.

### 2. **Physicians' Opinions**

Plaintiff also argues that the ALJ erred at step three because he erroneously assigned less weight to the opinion of his treating physician than to the opinion of the consultative examiner. P. Brief at 4.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c),(e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the

contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Here, in addition to plaintiff's treatment notes, the administrative record contains the opinions of two physicians: Dr. Tamara Modilevsky and Dr. Concepcion A. Enriquez.[5] AR at 202-06, 441-52. Plaintiff argues that the ALJ failed to give controlling weight to Dr. Modilevsky and his "other treating physicians," but fails to name any such other physician. P. Brief at 4. Because no other physician offers an opinion and the medical evidence demonstrates that plaintiff does not meet a Listing, this court will not discuss plaintiff's treatment notes from his other physicians.

Dr. Modilevsky, an internist, appears to have examined plaintiff on two occasions, June 16, 2009 and July 14, 2010. *Id.* at 202-07, 352. In a neurological questionnaire dated June 16, 2009, Dr. Modilevsky stated that plaintiff had permanent damage to the kidneys and multiple infarcts in the basal ganglia, and diagnosed plaintiff with a history of stroke, hypertension, and chronic renal injury, but did not attach the supporting medical records. *Id.* at 202. Dr. Modilevsky observed that plaintiff had normal strength in all extremities, no loss in his ability to use his hands for fingering or handling, and a normal gait. *Id.* at 202-03. In a separate Medical Source Statement, also dated June 16, 2009, Dr. Modilevsky, without citing supporting medical findings, opined that plaintiff: could lift/carry twenty pounds occasionally and twenty-five pounds frequently; could stand/walk

---

[5] Dr. Modilevsky's signature is illegible. As such, the ALJ refers to Dr. Modilevsky as "Dr. Madulusky," plaintiff refers to her as "Dr. Maulafalwsky," and defendant refers to her as "Dr. Modilevsky." *See* AR at 21, P. Brief at 3, D. Mem. at 10.

9

less than two hours in an eight-hour workday; could sit six hours in an eight-hour workday; and was limited to frequent reaching, handling, fingering, and feeling. *Id.* at 205-06. On July 14, 2010, Dr. Modilevsky treated plaintiff and observed, inter alia, that his hypertension was uncontrolled and ordered him to stop smoking. *Id.* at 352.

Dr. Enriquez, also an internist, examined plaintiff on November 16, 2010. *Id.* at 441-51. Dr. Enriquez reviewed plaintiff's medical records, including Dr. Modilevsky's neurological evaluation. *Id.* at 441-42. Dr. Enriquez observed that plaintiff had a blood pressure of 198/110, normal range of motion, normal motor strength, and normal gait. *Id.* at 442-44. Dr. Enriquez also reviewed a blood test, which showed that, except for a slightly elevated creatinine level, his complete blood count was normal. *Id.* at 444. Based on the review of the records and examination, some of Dr. Enriquez's impressions include that plaintiff: had a high blood pressure but was asymptomatic at the time; had a stroke in 2007 but his motor, sensory, and reflexes were intact and he was able to do fine and gross manipulation using his fingers without problem; and had no signs of congestive heart failure or stroke that day. *Id.* Dr. Enriquez opined that plaintiff: could lift/carry twenty pounds occasionally and ten pounds frequently; could stand/walk/sit six hours in an eight-hour day; should avoid exposure to unprotected heights and operation of dangerous machines; and was limited to frequent reaching, handling, fingering, feeling, pushing, and pulling. *Id.* at 445, 449.

In reaching his decision about plaintiff's RFC, the ALJ gave considerable weight to the opinion of Dr. Enriquez and less weight to Dr. Modilevsky's opinion that plaintiff be restricted to standing/walking less than two hours in an eight-hour workday. *Id.* at 21-22. The ALJ did not discuss the weight he gave each physician with regard to their diagnoses, but appears to have accepted both. The

weight the ALJ gave to the physicians' opinions regarding plaintiff's physical capabilities is irrelevant at step three. Regardless of whether the ALJ gave greater weight to Dr. Concepcion or Dr. Modilevsky, the weight of the opinions would not have affected his decision that plaintiff did not meet or equal a Listing. As discussed *supra*, the objective tests showed that plaintiff's creatinine levels were well-below those required by Listing 6.02(C)(3)(a).

Further, notwithstanding the fact that there is no evidence that the ALJ gave greater weight to Dr. Enriquez's diagnosis than Dr. Modilevsky's diagnosis, the ALJ was not required to give Dr. Modilevsky greater weight. Although plaintiff indirectly argues that Dr. Modilevsky was a treating physician and directly argues that she was a specialist, he erred in both regards. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting that the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist). Other than the opinion and treatment note from July 14, 2010, the administrative record contains no evidence that Dr. Modilevsky treated him. Indeed, none of the laboratory tests listed Dr. Modilevsky as the requesting physician. *See, e.g.*, AR at 295, 299, 307. Plaintiff's confusion regarding Dr. Modilevsky's specialty is somewhat understandable because Dr. Modilevsky completed the neurological questionnaire, but Dr. Modilevsky clearly listed her specialty as internist. *Id.* at 202-04, 206. And even if Dr. Modilevsky was a treating physician, the ALJ may reject or give less weight to her opinion so long as he provided legally sufficient reasons for doing so. *See Lester*, 81 F.3d at 830. Here, the ALJ, in fact, accepted Dr. Modilevsky's diagnosis, but rejected portions of her RFC finding, noting that they were unsupported by her findings. *Id.* at 21-22.

Plaintiff also argues that the ALJ should have given less weight to Dr. Enriquez's opinion because there were inconsistencies within her opinion. P. Brief at 4. First, plaintiff points out that Dr. Enriquez opined that plaintiff had no

sign of congestive heart failure or stroke despite characterizing his blood pressure as an "emergency medical condition." *Id.* Second, plaintiff notes that Dr. Enriquez stated that other than plaintiff's creatinine level, his CBC was normal when, in fact, his hemoglobin was also abnormal. *Id.* But, again, neither argument helps plaintiff because the ALJ did not give less weight to Dr. Modilevsky's diagnosis. Moreover, these were not actual inconsistencies. Hypertension may lead to heart failure or stroke, but by itself, does not indicate that the person has congestive heart failure or a stroke. As for plaintiff's CBC, his hemoglobin level was 0.2 g./dL below normal. The ALJ's failure to note the abnormality could have been simple error and was not inconsistent with his overall findings.

Accordingly, the ALJ's opinion that plaintiff does not meet or equal a Listing is supported by substantial evidence. Although the ALJ arguably erred by failing to specifically identify Listing 6.02(C)(3)(a), the error was harmless because the evidence did not support plaintiff's argument that he had a listed impairment.

**B.    The ALJ Reached a Proper RFC Determination**

Plaintiff argues that the ALJ failed to consider all of plaintiff's impairments in his RFC determination. P. Brief at 5-6. Specifically, plaintiff contends that the ALJ failed to consider the following non-severe impairments: obesity; anemia; sleep apnea; manipulative limitations; fatigue; concentration deficits; and need to urinate frequently. *Id.* at 5

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four).

Here, the ALJ determined that plaintiff had the RFC to perform light work, including lifting up to 20 pounds occasionally and 10 pounds frequently and standing/walking/sitting up to six hours in an eight-hour work day. AR at 18. The ALJ restricted plaintiff from exposure to unprotected heights and operation of dangerous machines. *Id.* The ALJ reached this determination based on the medical evidence and the opinions of Dr. Enriquez, Dr. Modilevsky, state agency physician Dr. Scott, and non-examining physician Dr. B. Vaghaiwalla. *Id.* at 21-22.

The ALJ properly considered all of the relevant evidence, including non-severe impairments. With regard to obesity, fatigue, and manipulative limitations, the ALJ expressly discussed or mentioned them in the decision. The ALJ noted that plaintiff weighed 235 pounds, had a body mass index of 34.7, and refused to modify his diet. *Id.* at 19-20. The ALJ also stated that plaintiff reported instances of fatigue. *Id.* at 18. As for manipulative limitations, the ALJ specifically considered but discounted those limitations because they were not supported by the record. *Id.* at 21-22. The ALJ noted that plaintiff exhibited full muscle strength in all extremities, had full ability to use his hands for work activities, and did not demonstrate any sensory or motor abnormalities *Id.* at 22, 202-03, 442-44. The court notes that, although Dr. Modilevsky and Dr. Enriquez found plaintiff had no loss in his ability to use his hands for fingering and handling and was "able to do fine and gross manipulation using his fingers with no problem" (*id.* at 203, 444), they both also opined that plaintiff should be limited to frequent reaching, handling, fingering, and feeling. *Id.* at 206, 449. Nevertheless, even if the ALJ improperly rejected this finding, the error would be harmless as plaintiff's past relevant work does not require continuous reaching, handling, fingering, or feeling.

As for sleep apnea, anemia, concentration deficits, and the need to urinate frequently, there is no evidence in the record to either support a finding that

13

plaintiff suffered from such conditions or a finding that plaintiff was limited as a result of such conditions. Of the four, only the need to urinate frequently is documented in the record and a physician addressed that concern by adjusting his medication. *See, e.g., id.* at 377, 380. Regarding sleep apnea and anemia, no physician diagnosed plaintiff with either. Nor did plaintiff allege that he suffered from either. Dr. Modilevsky raised the possibility that plaintiff might have sleep apnea, but nothing in the record shows an actual diagnosis. *See id.* at 207. And the record is bereft of any mention of anemia. Finally, although the ALJ did not directly discuss concentration deficits, because plaintiff only mentioned concentration problems once during the hearing in conjunction with fatigue, it is reasonable to presume that the ALJ considered fatigue and concentration problems together. *See id.* at 47.

There was substantial evidence to support the ALJ's RFC determination. Accordingly, the ALJ did not err.

C. **The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility**

Plaintiff complains that the ALJ failed to provide clear and convincing reasons for discounting his credibility. P. Brief at 6-7. Specifically, plaintiff alleges that the ALJ provided factually incorrect reasons for finding him less than credible. *Id.* The court disagrees.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[6] To determine whether testimony

---

[6] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ discounted plaintiff's credibility because: (1) the objective medical evidence did not support his limitations; (2) plaintiff failed to seek medical treatment; (3) plaintiff had a history of non-compliance with his treatment plan; (4) there were contradictions between his hearing testimony and the records and other statements; (5) plaintiff made inconsistent statements to his physicians; and (6) plaintiff's ability to walk a mile everyday contradicted his alleged limitations. *Id.* at 18-21.

Plaintiff only disputes two of the reasons, his non-compliance with his treatment plan and contradicted hearing testimony, specifically the statement regarding the length of his hospital stay. P. Brief at 6-7. By not challenging any

15

of the ALJ's other reasons for discounting his credibility, plaintiff waived any argument that the remaining reasons were insufficient. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised before the District Court are generally waived).

The first ground challenged by plaintiff is the inconsistent testimony concerning his hospital stay. *Id.* at 6. The ALJ noted that plaintiff was "less than candid" about his hospitalization because he testified that he was at the hospital for a month, but the hospital records showed that he was there only nine days. AR at 21. Plaintiff argues that Dr. Enriquez substantiated plaintiff's claim because her opinion noted that he was hospitalized for two months. P. Brief at 6. Plaintiff's argument is factually incorrect, and substantial evidence supports the ALJ's finding. Plaintiff's hospital records indicate that he was hospitalized for nine days. AR at 230-41. Dr. Enriquez's statement concerning a two-month stay simply reflected the oral history provided by plaintiff. *Id.* at 441. Indeed, Dr. Enriquez noted that plaintiff's hospital records showed that he was admitted on December 31, 2007 and discharged on January 8, 2008. *Id.* at 441.

Plaintiff also challenges the ALJ's finding that he was less credible due to his non-compliance with his treatment plan. Plaintiff acknowledges that he was non-compliant at times, but contends that the reason was not clear and convincing in light of his "overall compliance." P. Brief at 6. Plaintiff directs the court to two instances where he was compliant, or at least tried to be compliant, with his medication plan. *Id.*; *see* AR at 207-08. But substantial evidence demonstrates that plaintiff had an overall record of non-compliance with his treatment plan. As the ALJ noted, despite instructions to seek follow-up treatment three weeks after his hospital release on January 8, 2008, plaintiff did not seek treatment for approximately nine months. *Id.* at 20. Then, from 2009 through 2010, plaintiff regularly sought treatment, but the records are replete with notes of non-

compliance with both his medication plan and continued recommendations to eat a low sodium diet and stop smoking. *See id.* at 210-211, 320, 370, 380, 382-84.

In sum, the ALJ cited multiple clear and convincing reasons, the majority of which were uncontested, and all of which were supported by substantial evidence for discounting plaintiff's credibility. Thus, the ALJ's finding was proper.

**D.     The ALJ Did Not Err at Step Four**

Plaintiff argues that the ALJ erred at step four. P. Brief 7-9. Specifically, plaintiff alleges that: (1) it was insufficient for the ALJ to rely on the Dictionary of Occupational Titles ("DOT") and he should have consulted a vocational expert; and (2) the ALJ failed to analyze his past relevant work as it was actually physically performed. *Id.* Consequently, the ALJ incorrectly found that plaintiff was capable of performing his past relevant work. *Id.*

At step four, the claimant has the burden to show that he cannot perform his past relevant work. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). The regulations do not require that an ALJ consult a vocational expert at step four. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("We may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."); *Hopkins v. Astrue*, 227 Fed. Appx. 656, 657 (9th Cir. 2007) ("[T]he ALJ was not required to call a vocational expert at step four."); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (the testimony of a vocational expert was unnecessary when the claimant was unable to meet his burden and show that he was unable to return to his past relevant work).

Here, the ALJ determined that plaintiff was able to perform his past relevant work as a collections clerk (DOT No. 241.357-010). AR at 22. In determining what past relevant work plaintiff performed, the ALJ relied on the Medical/Vocational Decision Guide. *Id.* at 22, 169-70.

Because the ALJ is not required to consult a vocational expert, plaintiff's argument fails. Morever, the evidence demonstrates that although the ALJ did not consult a vocational expert during the hearing, he relied on one in determining plaintiff's past relevant work. A vocational expert completed the Medical/Vocational Guide and based his finding on plaintiff's own description of his job duties and the DOT. *See id*. at 169-70. Thus, not only did the ALJ rely on the opinion of a vocational expert to determine plaintiff's past relevant work, such determination also took into consideration plaintiff's job as actually performed.

Plaintiff also argues that DOT 216.362-014, collections clerk, may more accurately describe his past relevant work, but fails to explain how a different DOT code changes the disability finding. P. Brief at 7. Not only did the ALJ find that plaintiff was able to perform his past relevant work, he also concluded that plaintiff could perform nearly the full range of light work, which includes the entire range of sedentary work. AR at 23.

The ALJ therefore did not err at step four. Plaintiff did not meet his burden to show that he could not perform his past relevant work and the ALJ was not obligated to consult a vocational expert.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: August 6, 2013

SHERI PYM
United States Magistrate Judge